### HARRY A. SNOW v. VILLAGE OF EXCELSIOR.[1]

June 30, 1911.

Nos. 17,079—(168).

**Boundary of municipality — location of boundary by court.**

Personal injury action, in which the plaintiff had a verdict. The trial court granted a new trial, for the reason that the evidence conclusively showed that the alleged defective highway, which caused plaintiff's injury, was not within the territorial limits of the defendant. *Held*, the power to create a municipality and to prescribe its territorial limits is a legislative one, which cannot be exercised by the courts; but they have jurisdiction to locate on the ground the boundary line of a municipal corporation. The court had jurisdiction to render the judgment, as to the boundary line between the village and the town of Excelsior, referred to in the opinion.

**Evidence.**

Evidence considered, and *held*, that it conclusively shows that the locus in quo was not within the territorial limits of the village of Excelsior.

Action in the district court for Hennepin county to recover $1,910 for personal injuries. The answer alleged that never at any time had defendant been authorized to lay out, alter, open, widen or extend, establish, grade, repair or otherwise improve or keep in repair any road or street upon any land lying north of that portion of Lake Minnetonka commonly known as St. Alban's bay, or the inlet or outlet of said bay, and had never at any time attempted to do so and further alleged that plaintiff's injuries were due solely to his own negligence. The reply was a general denial. The case was tried before Holt, J., and a jury which returned a verdict in favor of

1Reported in 132 N. W. 8.

plaintiff for $500. From an order granting defendant's motion for a new trial, plaintiff appealed. Affirmed.

*Mead & Bryngelson,* for appellant.

*Freeman P. Lane* and *Lane & Malmberg,* for respondent.

START, C. J.

The plaintiff, his wife, and minor child were each injured on July 30, 1908, near the dividing line between the town and village of Excelsior, by an alleged defect in a highway at that point, which constituted the approach to a bridge. Each brought an action against the defendant to recover damages alleged to have been sustained by reason of the negligence of the defendant in maintaining the highway. The cases were tried together in the district court of the county of Hennepin. At the close of the evidence the defendant requested the court to instruct the jury to return a verdict for the defendant, on the ground that the negligence, if any, was that of the town of Excelsior, and not of the village. This was refused, and the jury were instructed that the accident occurred within the territorial limits of the defendant village. There was a verdict for the plaintiff in each case, and the trial court, upon defendant's motion, granted a new trial, on the ground that it conclusively appeared from the undisputed evidence that it was error to refuse the request of defendant for an instructed verdict, for the reason that the locus in quo was not within the territorial limits of the village. The plaintiff appealed from the order granting a new trial.

The question on this appeal is whether the evidence conclusively shows that the accident occurred within the corporate limits of the village of Excelsior; for, if it does not, then the charge of the court to the effect that the place of the accident was within the limits of the village was error, for which a new trial was properly granted. The evidence shows these facts:

The territory of the village was originally a part of the town of Excelsior. The legislature in 1877 provided for the incorporation of the village by Sp. Laws 1877, p. 31, c. 4, which designated its territorial limits by government subdivisions, of which only the northwest quarter of section 35, township 117, range 23, is here material. The north line of this quarter and of the section is the boundary line

between the village and town of Excelsior. If the location of this line is where the defendant claims it to be, the locus in quo lies north of it, and in the town; but if it is where the plaintiff claims it, the accident occurred within the limits of the village. The village and town, at the place of the accident, are separated by a navigable channel, leading from Lake Minnetonka proper into St. Albans bay, across which a bridge was constructed.

A controversy arose between the village and the town as to which should keep the bridge in repair and in safe condition for public travel. Accordingly, in the year 1903, they submitted the controversy to the district court of the county of Hennepin under the provisions of G. S. 1894, §§ 6083, 6084, now R. L. 1905, § 4286. In the agreed statement of facts it was stipulated that Exhibit A, thereto attached, correctly showed the location of the approach to the bridge with reference to the boundary line separating the town and village, and that the data found on the exhibit were correct and true. The survey as shown by the exhibit is this:

The line from A to B is a direct line and was so located from the U. S. meander corner 15 16/100 chs. W. of Cor. to Secs. 25, 26, 35 and 36 west to ¼ Sec. Cor. bet. Secs. 27 and 34. Said line crosses the bridge from Excelsior to Solberg's Point 44½ ft. north of the north end of the draw span.                    Geo. W. Cooley.

The judgment of the district court in the matter was to the effect that the village should keep in repair all of the bridge and the approach thereto which was south of a point forty-four and one-half feet north of the north end of the draw span, or, in other words, all of the bridge and approach south of the section line as indicated on Exhibit A. From the entry of this judgment to the trial of this action the line from A to B, as indicated on Exhibit A, was accepted and treated as the boundary line between the village and the town, by the public officers of each of them, for all public purposes. The town, at all times after the entry of judgment, maintained that part of the highway, including the bridge and approaches, which is north of such accepted line, and the village has never exercised any control or jurisdiction over such part of the highway.

The place of the accident which resulted in plaintiff's injury lies north of the accepted line and on that part of the highway maintained by the town. The northeast corner of section 35 is located on dry land, and is marked by the original government post, and the section line running west from this post intersects St. Albans bay. The respective points where the north quarter post of section 35 and the northwest corner post of the section would ordinarily have been placed are and were covered by the waters of the lake, and there never was any government post at either of these points. A right line drawn from the northeast corner of section 35 west to the nearest existing and known corner on the line, the north quarter post of section 34, would pass south of Solberg's point proper and the place of the accident. So also would a line, drawn from the northeast corner west to the meander post, hereafter mentioned, thence due east and west to the nearest corner on the line, the north quarter post of section 34. On the east shore of St. Albans bay, and at a point north of a right line drawn from the northeast corner of section 35 to the north quarter post of section 34, there is an existing government meander post on the shore of the lake. The plaintiff gave in evidence surveys made by running the section line west from the northeast corner of section 35, through the meander post, to the point, as testified to by the surveyors, where the northwest corner of section 35 would have been set, except for the waters of the lake, thence to

the north quarter post of section 34. The place of the accident lies south of this line.

It is clear from the record in this case that the trial court erred in instructing the jury as a matter of law that the place of the accident was within the corporate limits of the village of Excelsior, and that for this error, if for no other, the defendant was entitled to a new trial. We do not place our conclusion that a new trial was correctly granted upon this narrow ground, but upon the broad ground that the evidence conclusively shows that the accident, whereby the plaintiff was injured, did not occur within the territorial limits of the village. An examination of Exhibit A, in connection with the undisputed evidence as to the location of the government corners, seems to indicate that the north line of section 35, as indicated thereon, is the true one.

Our understanding of the government rule as to locating lost section corners and corners of fractional sections, which have not been and could not have been established and marked by a post or other monument, is to run a right line between the nearest existing corners on such line, and, further, that if a meander post, the primary purpose of which is to mark the shore line, is to be treated as a corner within the meaning of the rule, the line must be run thence east and west, or north and south, as the case may be, to the nearest established and known corner. R. S. U. S. 1878, § 2396, 23 Land Dec. Dep. Int. 361. If this be the correct rule, it follows that Exhibit A correctly locates the section line. However, the question is not discussed in the brief of either counsel, and we do not decide it.

This brings us to a consideration of the legal effect of the judgment relied upon by the defendant. The plaintiff urges that the judgment is void, because the court had no jurisdiction in the premises. It is true that the power to create municipalities and to prescribe their territorial limits is a legislative power, and cannot be exercised by the courts. Where, however, as in this case, the legislature does not locate by metes and bounds the boundaries of a municipal corporation but simply provides that its territory shall consist of certain government subdivisions, it is the province of the courts to determine the true location on the ground of its boundary lines.

The court had jurisdiction to render the judgment relied on by defendant in this case. There was a bona fide controversy between the village and the town of Excelsior as to the respective portions of the bridge in question and its approaches each should maintain. This was the primary question in dispute, but to determine the question and definitely to fix the part the village should maintain, it was necessary that the judgment should fix the boundary line between the village and town; for an obligation to maintain any part of the highway beyond its territorial limits could not be imposed upon either without express legislative authority. The very foundation of the judgment was the location of the boundary line. The reading of the judgment, in connection with Exhibit A, which is a part of the judgment roll, clearly shows that the point fixed in the judgment, south of which the village was required to maintain the bridge, is on the section line as shown on the exhibit.

The record shows that ever since the entry of this judgment, some six years, the public authorities of both the town and village, and the public generally, have recognized the line fixed by the judgment as the boundary line between the town and village. The village during the time stated has maintained exclusively the part of the bridge and approach south of the line, and the town in like manner has maintained the part north of the line, where the accident occurred. So far as the record discloses, the state has never questioned this, at least de facto, boundary line between the town and village. It seems clear that a private party cannot, under such circumstances, question the legality of de facto municipal boundaries. State v. Honerud, 66. Minn. 32, 34, 68 N. W. 323; State v. Board of Co. Commrs. of Crow Wing County, 66 Minn. 519, 528, 68 N. W. 767, 69 N. W. 925, 73 N. W. 631, 35 L.R.A. 745. The serious consequences to public and private interests which would result from permitting a private party to question the legality of de facto municipal boundaries are vigorously and convincingly stated by Canty, J., in the last case cited.

We are of the opinion, and so hold, that the judgment conclusively establishes the boundary line between the village and the town of Excelsior as to all parties, save possibly the state of Minnesota.

Order affirmed.